**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK GIDDENS,<br><br>Plaintiff,<br><br>v.<br><br>SERENITY HOME HEALTHCARE, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 26-cv-4159<br><br>Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mark Giddens ("Giddens") accuses his former employer, Defendant Serenity Home Healthcare, Inc. ("Serenity"), of discrimination and retaliation against him because of his disability and/or his age, and of failing to accommodate his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*., and the Illinois Human Rights Act ("IHRA"), 75 ILCS 5/1-101 *et. seq*. Before the Court today is Serenity's partial motion to dismiss Giddens' claims of retaliation, age discrimination, and failure to accommodate his disability. The Court denies the motion because Giddens has plausibly alleged all causes of action in his complaint.

## BACKGROUND

The following facts are drawn from Gidden's first amended complaint, dkt. 23 [hereinafter FAC], and are assumed to be true for the purpose of resolving the motion to dismiss.[1]

Plaintiff Mark Giddens is fifty-six years old. He was diagnosed with prostate cancer roughly two or three years ago. From June 2024 until September 1, 2025, Giddens worked as a home health

---

[1] For clarity, any reference to "the complaint" should be assumed to refer to the first amended complaint unless specifically indicated otherwise.

aide for Defendant Serenity Home Healthcare, Inc. His tasks at work included "personal care, including bathing, grooming, and hygiene, dressing and mobility support to ensure comfort and safety, light housekeeping to maintain a clean and livable environment, meal preparation and basic assistance with daily household tasks." FAC ¶ 17. Giddens's cancer substantially limited his major life activities, including "mobility, pain management, lifting, standing, walking, socializing, and attending to tasks." *Id.* ¶ 19. However, he was still able to perform the essential function of his job, and his clients reported satisfaction with his care. Serenity hired Giddens with full knowledge of his cancer diagnosis.

Giddens's cancer treatment occasionally required him to miss work for regular medical appointments or procedures. He reports that he always informed his supervisor, Ricky Cortez ("Cortez") about appointments with his urologist and attempted as much as possible to schedule the appointments around his assigned work shifts. (Cortez was approximately 24 years old.) In May 2025, Giddens took off two weeks of work for a medical procedure involving placing a catheter. He informed Cortez ahead of the procedure, and remained communicative during his time off. In August 2025 (likely early or mid-August), Giddens was admitted to the hospital for two days owing to complications from his cancer. He again informed Cortez. Then, in late August 2025, Giddens notified Cortez of an upcoming doctor's appointment, which caused Cortez to become hostile. Giddens reports that Cortez said "You're always sick, you always have medical stuff going on." *Id.* ¶ 33.

On or about August 30, 2025, Cortez called Giddens and told him "You're moving too slow." *Id.* ¶ 36. Giddens responded that he was doing his best and also reminded Cortez that he was fifty-six years old and undergoing cancer treatment. Cortez responded, "If you have cancer, you should stay home." *Id.* ¶ 41. During this conversation, Cortez did not say whether Giddens was performing his essential job functions according to Serenity's expectations, nor did he discuss with Giddens whether an accommodation would have enabled Giddens to better perform his essential job functions. After this phone call, Cortez removed Giddens from the work schedule beginning September 1, 2025, even

though Giddens had originally been scheduled through September 2, 2025. Since then, Giddens has not had any further communications with Cortez or Serenity, despite efforts on his part to call both Cortez and Serenity's corporate office. Giddens understood his removal from the schedule and the subsequent lack of communication as a constructive discharge, based on his age, disability, and/or in retaliation for protected activities.

Giddens filed his initial complaint on April 14, 2026. Serenity filed the instant partial motion to dismiss Giddens's first amended complaint on July 13, 2026, along with an answer to the claims that it did not move to dismiss. The Court took the motion under advisement on August 24, 2026, following the timely filings of the parties' respective response and reply briefs.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. See *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

Giddens's first amended complaint contains ten causes of action: disability discrimination under the ADA (Count I); failure to accommodate under the ADA (Count III); retaliation under the ADA (Count V); age discrimination under the ADEA (Count VII); retaliation under the ADEA (Count IX); and equivalent causes of action under the IHRA (Counts II, IV, VI, VIII, and X). Serenity has not challenged the sufficiency of Giddens's disability discrimination claims (Counts I and II), but it has moved to dismiss the rest of his causes of action for failure to state a claim under Rule 12(b)(6).

The analysis required by the Illinois Human Rights Act is "practically indistinguishable" from that required by the ADA and ADEA. *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022) (ADA); *see Owens v. Dep't of Hum. Rts.*, 403 Ill. App. 3d 899, 918 (2010) (ADEA). As such, the Court will focus below on Giddens's federal claims.

### I. Failure to Accommodate (Counts III & IV)

Counts III and IV of Giddens's first amended complaint allege that Serenity failed to accommodate his disability. Under the ADA and the IHRA, "an employer must make 'reasonable accommodations' to a disabled employee's limitations, unless the employer can demonstrate that to do so would impose an 'undue hardship.'" *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005) (quoting 42 U.S.C. § 12112(b)(5)(A)). To establish liability for a failure to accommodate, a plaintiff must show (1) that he is "a qualified individual with a disability"; (2) that the defendant knew of the disability; and (3) that "the employer failed to reasonably accommodate the disability." *Id.* at 797 (citing *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir.2001)). With respect to the third element, the ADA requires an employer and employee to engage in an "interactive process" to determine the most appropriate accommodation, if one exists. "If a disabled employee shows that her disability was not reasonably accommodated, the employer will be liable only if it bears responsibility for the breakdown of the interactive process." *Id.* (citing *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d

1130, 1137 (7th Cir. 1996)). Serenity does not contest that Giddens is a qualified individual or that it knew of his disability, but it argues that Giddens has not established a failure to accommodate because he has not alleged that Serenity denied an accommodation he requested.

In making this argument, Serenity contends that "An accommodation claim *requires* an accommodation that was reasonably requested and that the employer failed to provide." Dkt. 35 at *2 (emphasis added) (citing *Sears*, 417 F.3rd at 797). It is true that "the standard rule is that a plaintiff must normally request an accommodation before liability under the ADA attaches." *Jovanovic v. In–Sink–Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000). However, Serenity improperly expands this *standard* rule into an *absolute* rule. In fact, its own citations establish that there are circumstances under which an employer can be held liable for failing to accommodate a disabled employee, even when no accommodation has been requested. For example: "Where notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification." *Sears*, 417 F.3rd at 804; *see also Jovanovic*, 201 F.3d at 899 ("there will be exceptions to the general rule" quoted above); *Bultemeyer v. Fort Wayne Comm. Schs.,* 100 F.3d 1281, 1285–86 (7th Cir.1996) ("[I]f it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help.")

Here, the complaint establishes that Serenity, through Cortez, told Giddens that he was moving too slowly. FAC ¶ 36. This plausibly establishes that Cortez believed that Giddens was not adequately fulfilling the essential functions of his job. Giddens responded that his perceived slowness was due to his age and cancer treatment. His response provided notice to Serenity that, due to his disability, Giddens may have required an accommodation to ensure that he could fulfill his essential job duties. At this point, under the "standard rule," the onus would have been on Giddens to propose an accommodation. However, the complaint shows that Giddens was uncertain whether Cortez's

complaint was official notice that he was not performing his essential duties, or if it was a complaint of a lesser degree. Moreover, shortly after this conversation, Cortez removed Giddens from the schedule, and he was unable to contact either Cortez or the corporate office, despite diligent efforts on his part. As Giddens puts it, he had "effectively been ghosted by his employer." FAC ¶ 50. In this context, Giddens had little-to-no reasonable opportunity to request an accommodation. He did not have certainty about whether Serenity believed that his cancer affected his ability to complete his essential work duties prior to the moment of his discharge, an act which Serenity took while plausibly knowing that an accommodation might be able to solve the apparent problem.

Under these allegations, the Court believes that the "standard rule" may not apply and that Giddens has plausibly established that Serenity failed to accommodate his disability, despite the fact that he did not request an accommodation that was denied. Accordingly, the Court denies the motion with respect to Counts III and IV.

## II. Discrimination Based on Age (Counts VII & VIII)

The ADEA and IHRA establish civil liability for any employer who "discharge[s] any individual or otherwise discriminate[s] against any individual … because of such individual's age." 20 U.S.C. § 623. To ultimately prevail on an age discrimination claim, a plaintiff must be able to establish that the employer's discriminatory motive was a but-for cause of the adverse employment action that the plaintiff suffered. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). At the pleading stage, however, the bar to plausibly allege a claim is quite low. As the Seventh Circuit frequently reiterates, "a plaintiff does not need to plead a prima facie case of employment discrimination." *Freeman v. Eaton Corp.*, No. 23-2981, 2024 WL 4200580, at *3 (7th Cir. Sept. 16, 2024) (collecting cases). In general, "It is enough for a plaintiff to assert that she was treated worse because of protected characteristics." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

Serenity argues that the complaint does not plausibly establish a claim of age discrimination because it "identifies no similarly situated younger comparator, no younger replacement, and no other factual allegations permitting a plausible inference that age, not some other factor, motivated the challenged employment actions." Dkt. 24 at *5. It is true that the complaint does not contain any younger comparator or replacement. However, while identifying a comparator can help a plaintiff's case, it is not *required* to prove a claim of discrimination, much less to plausibly allege such a claim. *See Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 846 (7th Cir. 2007) (in some discriminatory termination cases it will be impossible to identify a similarly situated comparator); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 830 (7th Cir. 2014) ("The plaintiff is not required to identify similarly situated comparators at the pleading stage.").

Here, Giddens alleges that he was constructively discharged shortly after he informed Cortez that his perceived slowness was due to his age and his cancer. The Court noted above that this raises a plausible inference that Giddens was terminated because of his disability. It *also* raises a plausible inference that he was terminated because of his age. At the pleading stage, that is sufficient. The Court denies the motion with respect to Counts VII and VIII

## III. Retaliation

Under the ADA, ADEA, and IHRA, an employer can be found liable for retaliating against an employee for engaging in "protected activity," such as complaining to an employer (or the government) about discrimination. To establish a claim, a plaintiff must show that (1) he engaged in protected activity, (2) that the employer took an adverse action against the plaintiff, and (3) that the protected activity was a but-for cause of the adverse action. *Rowlands v. United Parcel Serv.*, 901 F.3d 792, 801 (7th Cir. 2018); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

*A. Disability-Based Retaliation (Counts V & VI)*

Serenity argues that Giddens's disability-based retaliation claims must be dismissed because he has not plausibly established that he engaged in protected activity for which he was constructively discharged. Although it acknowledges that the complaint shows that Giddens disclosed his disability and requested leave based on his disability, Serenity contends that "Merely disclosing a medical condition or taking medical leave does not, standing alone, constitute protected activity." Dkt. 24 at *4. However, when discussing Giddens's failure to accommodate claims on the previous page, Serenity argued that Serenity provided him with accommodations because "Plaintiff was permitted to take time away from work related to his medical condition." *Id.* at *3. It is well established that "permitting an employee to use paid leave can constitute a reasonable accommodation." *Swanson v. Vill. of Flossmoor*, 794 F.3d 820, 827 (7th Cir. 2015); *see also Coffey-Sears v. Lyons Twp. High Sch. Dist. 204*, No. 15-CV-08642, 2017 WL 1208439, at *9 (N.D. Ill. Mar. 31, 2017) (Wood, J.) (collecting cases). Moreover, requesting a reasonable accommodation is protected activity under the ADA. *See* 42 U.S.C. § 12203(a); *see also Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 802 (7th Cir. 2018).

Here, the complaint alleges that, in late August 2025, Giddens requested time off for a doctor's appointment, to which Cortez responded, "You're always sick, you always have medical stuff going on." FAC ¶¶ 32–33. No more than a few days later, on August 30, 2025, Cortez constructively discharged Giddens, plausibly because of his disability. These allegations are more than sufficient to state a claim for retaliation (discharge) for protected activity (requesting an accommodation of medical time off) under the ADA and the IHRA. The Court therefore denies the motion as to Counts V and VI.

*B. Age-Based Retaliation (Counts IX & X)*

Serenity brings similar arguments against Giddens's claim of age-based retaliation, namely, that he has not shown that he engaged in ADEA protected activity or that retaliation for such activity led

to his constructive discharge. In response, Giddens argues that his reply to Cortez's accusation of slowness—i.e., that it stemmed in part from his age—constituted protected activity. As he puts it, "When a supervisor makes a discriminatory comment and an employee responds by asserting his protected status and explaining that he is doing his best despite his age and disability, that is opposition to unlawful employment practices." Dkt. 34 at *14. Although Giddens provides no authority in support of this proposition, there is case law in his favor. In *Crawford v. Metropolitan Government of Nashville and Davidson County, Tennessee*, the Supreme Court offered the following comments on what it means to "oppose" unlawful action within the meaning of Title VII:

> "Oppose" goes beyond "active, consistent" behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. Countless people were known to "oppose" slavery before Emancipation, or are said to "oppose" capital punishment today, without writing public letters, taking to the streets, or resisting the government. And we would call it "opposition" if an employee took a stand against an employer's discriminatory practices not by "instigating" action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior worker for discriminatory reasons. There is, then, no reason to doubt that a person can "oppose" by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.

*Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 278 (2009). Much of the law applicable to Title VII is also applicable to the ADEA (and the ADA, for that matter), and the Court does not see any reason why that would not be the case here.

Under the Supreme Court's understanding of "opposition," it is reasonable at this point in the proceedings to infer that Giddens's response to Cortez's accusation of slowness constituted opposition to a discriminatory statement within the meaning of the ADEA and the IHRA. It is further reasonable to infer that Serenity, through Cortez, discharged Giddens because of such opposition, given that his constructive discharge occurred shortly after that conversation. While the Court acknowledges that Giddens's complaint does not contain copious evidence of age-based retaliation,

the allegations above are sufficient to plead such a claim. The Court therefore denies the motion with respect to Counts IX and X and consequently denies the motion in full.

## CONCLUSION

Defendant Serenity Home Healthcare, Inc.'s motion to dismiss [24] is denied.

**IT IS SO ORDERED.**

Date: 11/19/2026

Entered: ______________________________
SHARON JOHNSON COLEMAN
United States District Judge